## Hiester, Appellant, *v.* Hiester Reiff & Company.

*Notes—Renewal notes—Partnership—Dissolution—Adjustment of accounts—Counsel fees.*

In an action of assumpsit on a note given in renewal of other notes representing plaintiff's interest in a partnership it appeared that plaintiff sold his interest to his partners and withdrew from the partnership. The withdrawal agreement recited certain accounts receivable as being "doubtful" and provided for deduction from the notes of a proportionate share of any claims due the firm which might prove uncollectible. The agreement also provided that the proportionate share of any loss arising from any other accounts contracted prior to the date of dissolution should be borne by plaintiff.

Under such circumstances defendants were entitled to credit for plaintiff's proportion of the claims which had proved uncollectible, even though not particularly specified in the agreement.

Where in such case the withdrawal agreement provided that "in the event of any successful suits at law" were brought against the partnership on a certain claim the plaintiff should contribute his share, it was error to credit the defendants with a proportionate share of counsel fees spent in advance of a suit which proved unsuccessful.

Argued October 19, 1926. Appeal No. 141, October T., 1926, by plaintiff from judgment of M. C. Philadelphia County, January T., 1925, No. 49, in the case of Samuel P. Hiester v. Hiester Reiff and Company, Inc. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Modified.

Assumpsit on a promissory note.  Before CRANE, J., without a jury.

The facts are stated in the opinion of the Superior Court.

Defendants filed a counter-claim.  The court found for the defendant in the sum of $697.50 and entered judgment thereon.  Plaintiff appealed.

*Errors assigned,* among others was the finding of the court and the allowance of the set off.

*R. W. Archbald, Jr.,* and with him *Elmer C. Pfeiffer,* for appellant.

*Edgar S. McKaig,* for appellee.

OPINION BY LINN, J., March 3, 1927:

This suit, by the payee against the corporate maker of a promissory note, grew out of a partnership relation.  Plaintiff and three others had been partners.  February 1, 1922, they agreed on terms of sale by plaintiff to his partners of his interest in the firm, and provided for his withdrawal.  The price was stated as $28,324.81, "that sum representing his interest as of January 1, 1922, as disclosed by the books" (with interest and withdrawal adjustments not now important).  The agreement provided for part payment in cash and for the delivery of two notes of $7500 each, to be made by the purchasers, the first maturing July 1, 1922, and the second December 31, 1922.

Paragraph 2 recited certain accounts receivable as "considered doubtful," and it was agreed that if any "shall prove uncollectible on December 31, 1922," "the loss thereof shall be borne by said partnership, and the proportionate share of said loss due from [plaintiff] shall be deducted from said promissory note maturing December 31st."  The agreement continued,

"that any loss arising from any other accounts contracted prior to January 1, 1922, shall be borne by said partnership, and the proportionate share of said loss due from [plaintiff] shall likewise be deducted.........."

Paragraph 3 recited "that in the event of the successful termination of suit at law brought against the said partnership by [a named claimant] for an alleged claim [specified] prior to January 1, 1922, the said partnership hereby agrees to bear and pay their and each of their proportionate share thereof."

In paragraph 5 the purchasers agreed they would "pay and satisfy all claims of which [plaintiff] stands chargeable for and concerning the affairs of ......" and agreed to indemnify him against loss arising from all debts and liabilities of the firm, "saving and excepting only the possible loss in the suit as set forth" in paragraph 3. The last paragraph provided for mutual releases.

When the note maturing December 31, 1922, was presented for payment, it developed that the purchasers had not yet exhausted the possibility of collecting all the doubtful accounts, whereupon plaintiff agreed that the "renewal of this note does not change the provision of the agreement expiring today and hereby continues it until such time as you [purchasers] may be able to get the accounts together, except Gilgore and Turner I may question." By that time the purchasers had incorporated the business. The plaintiff received $500 on account and accepted a renewal note for $7000. Other payments on account were made until July 23, 1923, when the note in suit was made; it was signed by the corporation and not by purchasers.

To this suit, a set-off and counterclaim was interposed. It was averred that of the doubtful claims listed in the agreement, a part had proved uncollectible and credit was claimed pursuant to the agreement for 30% of the total, that rate representing plaintiff's in-

terest in the old firm; like credit was claimed on certain other uncollectible accounts and claims against others which had not been specified in the agreement, and on certain accounts payable or obligations of the old firm which the purchasers had paid—all of course arising prior to January 1, 1922. It was also averred that the possible suit, referred to in the third paragraph of the agreement, had been brought and had been lost by the party bringing it, and that accordingly 30% of the counsel fee paid by the corporation should be chargeable to plaintiff. As the total of the set-off and counterclaim exceeded the face of the note in suit, a certificate against plaintiff was sought. At trial, plaintiff conceded a part of the set-off and denied liability for the balance.

The case was tried by a judge without a jury; he awarded a certificate to defendant for $697.52. As no point is made of the fact that the corporation appears to have been substituted for the purchasers we assume that such substitution was arranged by the parties.

On this appeal various contentions are made. The decision depends on the correct interpretation of the contract, and does not require discussion of the cases cited in the briefs. It was an agreement for the dissolution of a partnership,—the retirement of one partner and the purchase of his interest and the continuance of the business by the purchasing partners. In the preamble to the agreement they recite the existence of debts due by and debts due to the firm and a mutual desire to wind up. It is settled that contracts must be construed with reference to their subject matter, and in that light the intention of the parties must be sought by what they said and did in their agreement. At the bottom appears plaintiff's desire to receive and the purchasers' willingness to pay him a "sum representing his interest as of January 1, 1922," the actual amount to be thereafter ascertained

definitely. Payment of part was to be represented by notes, the amount payable on the last note to remain unascertained "until such time as you [purchasers] may be able to get the accounts together"; to arrive at the value of his interest, a deduction must be made from the face of the note, equal to the plaintiff's proportionate interest in the old firm. That this was the understanding of all the parties, is further evident by the fact that when the December 31st note was presented, payment on account was made and the time for final settlement was extended.

Appellant argues that the listing of doubtful accounts receivable indicates an intention to exclude all other accounts in the ultimate adjustment. But this overlooks the obvious purpose to pay to plaintiff the value of his interest; the expression that any loss arising from any other accounts contracted prior to January 1, 1922, shall be borne by the partnership, referred to accounts whether receivable or payable, save only the single item dealt with separately,—the possible suit referred to in paragraph 3. We have considered these accounts described in the evidence but find it unnecessary to state them in detail; no error has been pointed out by appellant; he was overpaid by a mistake of fact. There is nothing in appellant's point that his proportion of the Gilgore account was not deductible; during Gilgore's employment by defendant his commissions at no time equalled what he owed at the time on his drawing account; that evidence supports the finding of the trial judge.

This brings us to the claim growing out of the possible suit; it had not been brought when the agreement was made; conceivably, it might never have been brought; counsel, whose fee is involved, was not employed until afterward. We interpret the agreement to mean that plaintiff was not to be called on to pay anything unless suit was brought and the claimant

succeeded. As the suit failed, appellant is not to contribute to the payment of the counsel fee; the purchasers might just as well have called on him to pay a part of the other expenses of the suit, and it is not without significance that they made no claim on that account. The counsel fee was $1,000; it was error to charge appellant with any part of it; the assignment of error raising that point is sustained; the others are dismissed.

The record is returned with instructions to modify the judgment by deducting from the amount of the certificate awarded to defendant, the sum included therein on account of the counsel fee charged against appellant.